(No. 46539.–

THOMAS McINERNEY, Appellee, v. HASBROOK CONSTRUCTION COMPANY, Appellant.—(Universal Painting Contractors, Inc., Third-Party Defendant and Separate Appellee.)

*Opinion filed September 26, 1975.*

SCHAEFER, J., UNDERWOOD, C.J., and RYAN, J., dissenting.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Michel A. Coccia, Michael P. Connelly, and Daniel J. Cheely, of counsel), for appellant.

Nat P. Ozmon, of Horwitz, Anesi, Ozmon & Associates, Ltd., of Chicago, and Dario A. Garibaldi, of Flossmoor, for appellee Thomas McInerney.

John T. Kennedy, of Querrey, Harrow, Gulanick & Kennedy, Ltd., of Chicago, for appellee Universal Painting Contractors, Inc.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Plaintiff, Thomas McInerney, filed a multicount complaint in the circuit court of Cook County against Hasbrook Construction Company (Hasbrook) based on defendant's alleged negligence and also on alleged violations of the Structural Work Act (Ill. Rev. Stat. 1963, ch. 48, par. 60 *et seq.*). Hasbrook filed a third-party indemnity action against plaintiff's employer, Universal Painting Contractors, Inc. (Universal), predicated first on express contractual indemnity and also on an implied right of recovery due to Universal's more active culpability for the injury. The trial court directed a verdict against plaintiff on the negligence count and against Hasbrook on its claim for express contractual indemnity. The jury returned a verdict for $80,000 in favor of plaintiff based upon the

Structural Work Act liability of Hasbrook. A verdict in a like amount was rendered on behalf of Hasbrook and against Universal in the third-party action based on the claim of implied indemnity. The trial court, notwithstanding the verdict, entered judgment in favor of Hasbrook on the Structural Work Act liability and against plaintiff. Judgment notwithstanding the verdict was also entered in the third-party indemnification action on behalf of Universal. Conditionally, the court found the verdicts were not sustained by a greater weight of the evidence and therefore granted Hasbrook and Universal new trials. Further the court held that Universal was entitled to a new trial on the third-party complaint even if Hasbrook was not.

The appellate court reversed the judgment *n.o.v.* entered on behalf of Hasbrook and the trial court's order granting Hasbrook a new trial. The appellate court held that the evidence was sufficient to support the jury's determination that Hasbrook had "charge of" the work at the time of plaintiff's injury and was liable under the Structural Work Act for failing to provide plaintiff with proper working conditions or proper equipment. The appellate court rejected Hasbrook's assertion that its contract with Universal was applicable to sustain a claim for express indemnity. Finally, the majority of the appellate court found that the misconduct of Hasbrook was qualitatively similar to that of Universal, thereby precluding Hasbrook's implied indemnity action on a theory of active-passive misconduct. It therefore affirmed the judgment *n.o.v.* entered for Universal on the third-party action, thereby rendering unnecessary the consideration of the trial court's order granting a new trial to Universal. (*McInerney v. Hasbrook Construction Co.,* 16 Ill. App. 3d 464.) We granted Hasbrook's petition for leave to appeal.

The incident in question occurred at a subdivision developed by Hasbrook, as general contractor, which

consisted of 200 single-family residences. It is to be gathered from the record that Hasbrook did not have any skilled tradesmen in its own employ. Rather, Hasbrook would have the actual construction work performed by seven or eight subcontractors engaged in various building trades. When a house was sold, the purchaser and a representative of Hasbrook would inspect the quality of construction. Any defects or additional work that needed to be done would be noted on a checklist that would be subsequently given to the appropriate subcontractor for completion.

On January 2, 1964, plaintiff was employed as a house painter for Universal, the painting subcontractor. He was working on a newly constructed home owned and recently occupied by Herman Youker. It was described as a "3600 model" home. After obtaining all necessary supplies from Universal, which included an extension ladder, he went to the Youker home to begin "touch-up painting" on the structure's wooden trim that had been noted on a checklist made December 13, 1963. He worked on various parts of the home during the morning. About noontime he positioned the ladder on the Youker driveway with its base about 2½ feet from the wall and with the top of the ladder touching the house so as to enable him to paint an area near the peak of the roof. Plaintiff testified that the driveway was covered with dirt and construction debris that included shingles, paper, wood and bricks, although Herman Youker's testimony refuted this observation. Plaintiff inspected the ladder and determined that it was secure. He then climbed the ladder and began to paint above the second floor of the structure before he took his lunch break. After lunch he did not move the ladder. He climbed the ladder and prepared to continue painting when the ladder moved causing it to fall and break a second-floor window before it came down. As a result of the accident, plaintiff suffered a severe injury to his left foot and ankle. The extent of the injury or the amount of

damages sustained therefrom are not disputed.

Lester Stone, Universal's foreman, saw plaintiff fall and drove plaintiff to the hospital. Stone testified that Hasbrook employed a construction superintendent at the subdivision. He said that Hasbrook would determine a painting schedule and its superintendent would give Universal the checklist. The superintendent was to assure that the painting was completed on schedule; however, he apparently did not do so. If any difficulties developed, the superintendent was not to speak to the painters but to this witness. Stone also testified that he would see the superintendent at the jobsite on several occasions each day although the only occasion he discussed the work was when the superintendent brought a checklist to be completed.

In regard to the construction, Albert Riley, Hasbrook's president, testified that a color scheme for the house would be selected that would be forwarded to Universal. Hasbrook was concerned only that the work was timely completed and in a proper manner. Riley stated that Hasbrook would merely tell Universal the house to be painted and when it was to be done. If the work was not approved by the purchaser, it was Universal's decision as to the corrective method to be used; and, if Hasbrook's superintendent discovered improper workmanship during construction, the subcontractor would be told to make corrections. Riley insisted that Hasbrook only supervised the subcontractors and not the latter's workmen.

Hasbrook and Universal had entered into a contract in June, 1961, whereby the latter was to paint homes in the subdivision. In pertinent part the contract provided that Universal was to perform in a workmanlike manner in accord with "plans and specifications prepared by Lawrence T. Smith" (architect). Work was to be performed pursuant to Hasbrook's work assignments and was not to be deemed as completed until accepted by it. Universal was to furnish all materials for completion of its work and

to maintain supervisory personnel at the jobsite. Payment was to be made in accordance with a schedule listing four specific home models designated as 2500, 2600, 2800 and 2900. The contract also contained handwritten price modifications on work done on certain parts of the specified models. The contract did not set a limitation on the number of units to be painted.

Under the "General Provisions" portion of the contract Hasbrook was to designate its field supervisory personnel in writing. The subcontractor would follow the job assignment schedule given by Hasbrook unless otherwise authorized. The subcontractor was also responsible for removal of construction debris and was to conform to all safety requirements. Hasbrook reserved the right of unqualified access to the project to inspect the work and to increase, decrease or alter the work by written order. If modification in the work was necessary, the change in the contract price resulting therefrom would be agreed upon before the work began. The contract further recited that the subcontractor was to maintain various insurance coverages including provision for bodily injury. The agreement concluded:

> "Without limiting the generality of the foregoing, the [sub] Contractor shall at all times, protect, indemnify and save harmless Hasbrook, its officers, agents and employees from and against any and all claims and actions, together with all expenses (including attorney's fees) incurred in connection therewith under an act of the Legislature of the State of Illinois, approved June 3, 1907, and entitled, 'An Act Providing for the protection and safety of Persons on and about the Construction, repairing, alteration, or removal of Buildings, Bridges, Viaducts and other Structures.' (commonly referred to as 'The Scaffold Act.')"

Riley testified that as the construction of the subdivision progressed models other than those specified in the contract were designed and were painted by Universal. The record establishes that the "3600 model" was de-

signed by an architect other than the one specified in the contract and introduced in the subdivision about a year after construction initially commenced. Riley explained that as new models were added or labor prices increased an adjustment in prices was made with Universal. Although no new written agreements were made as to new models, Universal would invoice Hasbrook for payment of the completed work on new models. Julius Swederlow, Universal's president, testified that prices on the new models would be determined by submitting a proposal or by telephone communication.

Hasbrook attempted to introduce evidence that the first invoice pertaining to a "3600 model" home was submitted by Universal in October 1963. Records further showed Universal performed work on other model homes not specifically designated in the contract. It appears that Hasbrook sought to establish that these exhibits were relevant to show the intent of Hasbrook and Universal to extend the written contract provisions to a "3600 model" home.

The trial court denied admission of the contract into evidence when it determined that the contract did not pertain to a "3600 model" home, thereby rendering Hasbrook's claim for express indemnity improper. The invoice and other records were also denied admission for this same reason. The trial court then directed a verdict in favor of Universal on that portion of the third-party action predicated on express contractual indemnification.

Hasbrook initially argues that the evidence fails to establish that it was in "charge of" the work within the meaning of the Structural Work Act and that the judgment *n.o.v.* entered by the trial court discharging it from liability was therefore proper. Hasbrook asserts that it merely delivered a work order to Universal; that it did not supervise, direct or observe the work; and that it did not provide any equipment for the performance thereof. Hasbrook concludes that the evidence failed to establish its

direct connection with an ongoing activity protected by the Structural Work Act. In support of its position Hasbrook has cited numerous decisions of this court and the appellate courts. Of principal import are *Warren v. Meeker*, 55 Ill.2d 108, and *Carruthers v. B. C. Christopher & Co.*, 57 Ill.2d 376.

Both the decisions in *Meeker* and *Christopher* are factually distinguishable. In *Meeker* the owner-lessor had constructed the structure about 19 months prior to the alleged accident. There were no facts alleged in the complaint to indicate this party's connection with the operation or repair of the structure since the time of its placement on the codefendant's property. There were no allegations that the owner-lessor could retain anyone to perform the repairs or that he exercised any control or supervision over the repair activity. It was further noted that there were no facts alleged in the complaint that the owner-lessor even knew of the purported repair activity. In the *Christopher* case the defendants operated a certain grain bin which was in need of repair. Plaintiff was an employee of the construction company designated to make the repair. This court approved the entry of summary judgment for defendants, concluding that no genuine issue of material fact was presented. We noted that a co-employee of plaintiff was the supervisor of the repair activity and the defendants did not attempt to tell the repairmen the method which should be used to conduct their activity. The defendants' status in *Christopher* was comparable to that of a mere owner of property upon which activity occurs that is protected by the Structural Work Act. *Gannon v. Chicago, Milwaukee, St. Paul and Pacific Ry. Co.*, 22 Ill.2d 305, 319-20.

In the present case Hasbrook was the general contractor for the development of a substantial subdivision of single-family homes. The record establishes that Hasbrook advertised these homes and concluded the sale with the purchaser. Both the purchaser and a Hasbrook representa-

tive inspected the homes, noting any defects on a checklist. Hasbrook then submitted the checklist to the appropriate subcontractor to complete the specified work. In this regard Hasbrook maintained a superintendent in the area to assure the work was completed on schedule and in a workmanlike manner. According to the testimony of Hasbrook's president, the defendant was to supervise the subcontractors. The evidence does not indicate that Hasbrook's superintendent supervised and controlled the actual activities of the individual employees of the subcontractors. Lack of such factors, however, is not determinative as to Hasbrook's "having charge of" the work. (*Larson v. Commonwealth Edison Co.*, 33 Ill.2d 316, 322.) Nor does it appear from the record that Hasbrook may have sought to stop the work if it was performed in an unsafe manner. Yet the record does reflect a degree of participation by Hasbrook in the ongoing construction activity that was totally lacking in *Meeker*. Similarly, Hasbrook's posture is different from the defendants in the *Christopher* case, in that Hasbrook admitted that it supervised and coordinated the subcontractors and that it was responsible to purchasers in assuring that all construction defects were corrected. Such factors would tend to indicate that Hasbrook was directly connected with the construction operations. See *Buehler v. Toynan Construction Co.*, 52 Ill.2d 214, 217; *Larson v. Commonwealth Edison Co.*, 33 Ill.2d 316, 322.

Whether a defendant is deemed to have "charge of" the work within the meaning of the Structural Work Act is primarily a question to be determined by the jury. (*Voss v. Kingdon and Naven, Inc.*, 60 Ill.2d 520, 525; *Gannon v. Chicago, Milwaukee, St. Paul and Pacific Ry. Co.*, 22 Ill.2d 305, 323.) As we have repeatedly held, such determination should not be overturned by entry of a judgment *n.o.v.* unless all the evidence "when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence

could ever stand." (*Pedrick v. Peoria and Eastern R.R. Co.,* 37 Ill.2d 494, 510.) When viewed in this perspective we do not believe that the evidence so overwhelmingly favors Hasbrook that the jury's contrary verdict was improper.

Hasbrook also advances the contention that the evidence does not establish it was guilty of a "wilful violation" of the Structural Work Act which proximately caused plaintiff's injury. Hasbrook claims there is no testimony pertaining to any violation of safety regulations, failure to provide necessary equipment or evidence indicating the ladder was defective. It further asserts that plaintiff acted within his own discretion in positioning the ladder and that there is no indication that dirt and debris to which plaintiff alluded caused the ladder to fall.

This court has interpreted the term "wilful" to mean "knowing." (*Gannon v. Chicago, Milwaukee, St. Paul and Pacific Ry. Co.,* 22 Ill.2d 305, 321.) A defendant is considered to know that which he could have reasonably known. (*Miller v. DeWitt,* 37 Ill.2d 273, 291.) And the issue of proximate cause is normally a factual consideration to be decided by the jury based on the facts and circumstances of each case. (*Juliano v. Oravec,* 53 Ill.2d 566, 571.) Applying these factors to the present case the jury's verdict was proper.

At the conference pertaining to jury instructions the trial court intimated the evidence was insufficient to warrant submission to the jury of plaintiff's specific allegation that the ladder was defective or improperly equipped with safety devices, and plaintiff has not argued that the trial court's limitation was improper. The thrust of the instruction given to the jury alleged three violations of the Structural Work Act. The jury was instructed that plaintiff claimed Hasbrook violated the Structural Work Act in failing to provide that the ladder was so placed as to give adequate support; that the ladder was situated on a sloping area that was slippery and covered with debris; and that Hasbrook failed to properly supervise and control the

work.

There was evidence presented from which the jury may have reasonably concluded that the ladder was not placed in a suitable area in order to paint. Plaintiff's testimony indicated that the area was cluttered with debris and dirt. There were also photographic exhibits apparently showing that the driveway area on which the ladder was placed may have sloped, although the pictures have not been included in the record before us as an aid for our consideration. (See *Tenenbaum v. City of Chicago*, 60 Ill.2d 363, 366.) It may therefore be inferred that the ladder slipped as a result of the dangerous condition of the surface area upon which the ladder was required to be placed in order to reach the portion of the house that was to be painted. It is also possible to infer that Hasbrook knew or could have known of such condition due to the presence of Hasbrook's superintendent on the jobsite.

In the third-party action Universal has adopted the position that, if there was a violation of the Structural Work Act, said violation was attributable to both Hasbrook and itself. In such instances, Universal argues, the qualitative misconduct, if any, of both parties is the same, thereby precluding a third-party action predicated on implied indemnity. (*Harris v. Algonquin Ready Mix, Inc.,* 59 Ill.2d 445, 449.) In support of this position Universal maintains that it was not responsible for any dirt or debris on the driveway area that might have caused the slippage of the ladder. Moreover, Universal says that, if Hasbrook is found to be in charge of the work, both it and Hasbrook could be equally responsible for the improper placement of the ladder and for the failure to supervise the work, which were the other bases of liability alleged by plaintiff as violations of the Structural Work Act.

In *Miller v. DeWitt*, 37 Ill.2d 273, the plaintiffs sought both common law and statutory recovery against the architects of a construction project for injuries sustained when the roof of the structure collapsed. The architects

filed a third-party action against plaintiff's employer. We concluded the architects' right to stop the work supported the jury's determination that they were in "charge of" the work for purposes of sustaining liability under the Structural Work Act. We noted that the architects' basis for liability (failure to stop the work) could be classified as qualitatively dissimilar to the alleged misconduct of plaintiff's employer in its alleged failure to utilize proper construction methods and techniques. (37 Ill.2d 273, 291.) In so holding we quoted with approval from *Rovenkamp v. Central Construction Co.,* 45 Ill. App. 2d 441, 449:

> "*** Although the liability imposed by the [Structural Work] Act does not rest upon negligence, there can be degrees of fault among those who, under the Act, are accountable to an injured plaintiff. Who is the more culpable, a party who supervises and coordinates the overall project, or a party who is responsible for the scaffolding and the particular work which produced the injury? Both are in charge of the work ***. Neither can escape liability to the [injured] plaintiff—thus the purpose of the Act is accomplished—but the lesser delinquent, if held accountable by the plaintiff, can transfer its statutory liability to the active delinquent, whose dereliction from duty brought about the plaintiff's injury."

And we concluded that the imposition of third-party liability was to be decided by the jury.

We are of the opinion that the rationale of the *DeWitt* decision is applicable to this case and that the question of implied indemnification was properly determined by the jury. Hasbrook coordinated the entire project while Universal supervised and controlled the actual painting activity and provided its own foreman and materials for this work. It is common knowledge that construction sites, at times, are littered with construction materials and other

items, thereby increasing the danger to workmen employed thereon. The jury could have accepted plaintiff's contention that Hasbrook failed to provide a suitable work area in which to conduct the painting. Yet Universal provided a foreman to supervise plaintiff's actual work who might have stopped the work if it was being performed in an unsafe manner under the existing conditions or modified the method in which the work was to be done, thereby preventing the occurrence. As previously noted, the record establishes that Hasbrook was not authorized to so act. Thus the misconduct of Hasbrook and Universal could be considered qualitatively dissimilar and the entry of a judgment *n.o.v.* in favor of Universal was improper.

Universal maintains that the trial court improperly denied it the right to question plaintiff as an adverse witness (Ill. Rev. Stat. 1971, ch. 110, par. 60) relative to certain statements made in a discovery deposition. Universal suggests that for this reason it is entitled to a new trial. Universal's brief describes its offer of proof as to plaintiff's prior statements as showing that plaintiff "had testified at his deposition that the ladder would not have slipped if the driveway had been cleaned of construction debris, which was dirt, stone, wood, just about everything; that it was on that material he had placed the ladder in the driveway which was covered with dirt for five days before the accident." We need not consider the propriety of the limitation imposed by the trial court. These statements afford no basis for relieving Universal of its obligations to indemnify Hasbrook.

Hasbrook and Universal have requested that, if the judgments *n.o.v.* entered by the trial court in their respective actions were improper, then the trial court's determination to grant them new trials should be sustained. We have reviewed the record and are of the opinion that the evidence presented was sufficient to sustain the jury's verdicts. The trial court therefore erred in ordering

new trials. *Bank of Marion v. Robert "Chick" Fritz, Inc.,* 57 Ill.2d 120, 126.

Accordingly, the judgment of the appellate court reversing the judgment *n.o.v.* in favor of Hasbrook is affirmed. The appellate court's denial of a new trial to Hasbrook is affirmed. And the portion of the appellate court judgment denying indemnity to Hasbrook is reversed. The cause is remanded to the circuit court of Cook County for entry of judgments in accord with the views expressed herein.

*Affirmed in part and reversed in part and remanded, with directions.*

MR. JUSTICE SCHAEFER, with whom MR. CHIEF JUSTICE UNDERWOOD and MR. JUSTICE RYAN join, dissenting:

Chief Justice Underwood, Mr. Justice Ryan and I are unable to agree that the evidence recited in the opinion of the majority establishes that the defendant, Hasbrook Construction Co., was "in charge" of the work within the meaning of the Structural Work Act. It is our opinion that the trial judge correctly entered judgment notwithstanding the verdict in favor of that defendant. To the extent that the opinion of the majority reaches a contrary conclusion, we respectfully dissent.