DONALD GETZ, Plaintiff-Appellant, v. DEL E. WEBB CORPORATION *et al.*, Defendants-Appellees.

First District (5th Division)    No. 61241

Opinion filed May 14, 1976.

Philip E. Howard, Ltd., and Philip A. Doran, Ltd., both of Chicago (William J. Harte and John Lowrey, of counsel), for appellant.

Kirkland & Ellis, of Chicago (William D. Maddux, Gary M. Elden, and Aaron E. Hoffman, of counsel), for appellees.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

Plaintiff brought this action to recover damages for injuries received as a result of a violation of the Structural Work Act. (Ill. Rev. Stat. 1969, ch. 48, par. 60 *et seq.*) At the close of plaintiff's case in chief the trial court granted a motion for a directed verdict in favor of all defendants. On appeal plaintiff contends that (1) it was error for the court to direct a verdict in favor of defendants, (2) the court abused its discretion by denying plaintiff's motion for a change of venue[1] and (3) the court erred by refusing to admit certain safety standards into evidence.

---

[1] In his brief plaintiff also contended that the court improperly denied his motion for a continuance made at the initiation of trial. At oral argument it was conceded by counsel that there was no merit in this contention. We have reviewed the record in the instant cause and find that in view of the vigorous and effective representation afforded plaintiff at trial, he was not prejudiced by the denial of this motion.

Plaintiff, a sheet metal worker, was injured when he fell from a movable scaffold at a construction site in Oakbrook, Illinois, on October 12, 1970. He was employed by Federal Ventilating Company, a subcontractor of L. C. Kohlman, Inc., the heating and ventilating contractor at the site. He brought this action under the Structural Work Act (popularly known as the "Scaffold Act") against the Del E. Webb Corporation, the general contractor, Del E. Webb Properties, Inc., and the Oakbrook Development Company, joint venturers who owned the property under construction, Alfred Shaw & Associates, the architect, and C. A. Metz & Associates and R. G. Burkhardt & Associates, consulting engineers.

The record reveals that at the time of the accident plaintiff and his foreman had been working for about two days on the sixth floor of the building marking connecting holes in duct work which hung approximately 13 feet from the floor. Marking ducts was a two-man operation. Plaintiff's foreman remained on the floor and determined from a blueprint where the ducts were to be placed, while plaintiff stood on the scaffold and marked the outline of a hole on the duct using a form called a template.

A "Baker" scaffold was used by plaintiff. It is made of tubular steel with a piece of plywood on the top. Its height could be adjusted to two or three levels by the use of four locking pins, and it was at its maximum height of six feet when the accident occurred. The scaffold had four-inch wheels on each corner. There were locks on them, but they were not being used. No guard rails or protective devices of any kind were being used.

After the marking operation took place, plaintiff would kneel down on the scaffold and tell his foreman it was all right to be moved. His foreman would then pull the scaffold to the next position.

Just before he fell, plaintiff had finished marking a hole and was going to kneel down on the scaffold. He was halfway between kneeling and standing when his foreman started to pull the scaffold. Plaintiff yelled for him to stop, but it was too late, and plaintiff fell backwards onto the concrete floor.

Plaintiff called an expert witness to testify as to certain standard customs and practices in the building industry with regard to the use of scaffolds. These standards apparently did not call for the use of guard rails on scaffolds under ten feet in height.

A superintendent of Federal Ventilation, plaintiff's employer, testified that it was against company policy for a worker to kneel on a scaffold while it is being moved.

The testimony of one of plaintiff's witnesses, Richard A. Frolik, is crucial to our determination of the issues raised in this appeal. Frolik was project superintendent for the Del E. Webb Corporation at the building

at which plaintiff was injured. It was his duty to coordinate the work among the various subcontractors working at the construction site, that is, he scheduled their work and saw to it that their jobs were performed in accordance with relevant standards and specifications. Fifty percent of his time was spent in the field making sure that the workers were performing their duties. Frolik's job was to see that the subcontractors performed their tasks according to the plans; he did not supervise the methods they used to accomplish their jobs, and he had no particular knowledge of the skills used by any building trade. Frolik testified that he held weekly safety meetings with the superintendents of the various subcontractors working on the project. He had no personal contact with plaintiff. The only circumstances mentioned by Frolik under which he would be empowered to stop work on the building were the financial incapacity of the contractor or if tradesmen became sloppy and were "ruining other people's work," in which case he could halt construction and hire replacements.

In arguments before the trial court on their motion for a directed verdict, it was defendants' basic position that plaintiff's evidence merely indicated a misuse of a safe scaffold. Defendants also argued that plaintiff's case was directed, in reality, only against Del E. Webb Corporation.

In response plaintiff conceded that:

> "Admittedly, there's been no mention of Burkhardt & Associates, and it was shown that Metz were consulting engineers who were long gone by the time Donald Getz got on the job."

However, as to the other defendants, plaintiff asserted that he introduced sufficient evidence to meet the standard set in *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 229 N.E.2d 504. Specifically, plaintiff argued that his proof showed that these defendants had charge of the work and that they willfully violated the Act in that they knew or should have known of plaintiff's improper use of the scaffold. (See *Kennerly v. Shell Oil Co.*, 13 Ill. 2d 431, 150 N.E.2d 134.) Plaintiff further pointed out that "contributory negligence" is not a defense to an action brought under the Structural Work Act. *Bryntesen v. Carroll Construction Co.*, 27 Ill. 2d 566, 190 N.E.2d 315.

The court rejected these arguments and granted defendants' motion.

OPINION

Verdicts should be directed only where all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict could ever stand. *(Pedrick.)* Plaintiff contends that he introduced sufficient evidence tending to establish (1) that defendants had charge of work at the building at which he was

injured and (2) that they had knowledge or should have had knowledge of the dangerous practices and conditions which caused his injuries to meet the *Pedrick* standard, and therefore he was entitled to have his case submitted to a jury. Plaintiff argues that his position is bolstered by the well-established principle that the Structural Work Act should be given a liberal construction to carry out the legislature's purpose of affording broad protection to workingmen. *McNellis v. Combustion Engineering, Inc.*, 58 Ill. 2d 146, 317 N.E.2d 573; *Crafton v. Lester B. Knight & Associates, Inc.*, 46 Ill. 2d 533, 263 N.E.2d 817.

At the outset we note that in arguments before the trial court counsel for plaintiff conceded that he had introduced no evidence tending to establish the liability of defendants C. A. Metz & Associates and R. G. Burkhardt & Associates, the consulting engineers. We have independently reviewed the record and confirm the absence of evidence regarding these two defendants. Therefore there can be no doubt that they were entitled to a directed verdict. Our analysis of plaintiff's contention regarding the asserted impropriety of the court directing a verdict against him will be directed toward the remaining three defendants.

Initially plaintiff disputes the assertion implicitly made by defendants below and raised again on appeal that due to the fact that he was employed by the subcontractor of a subcontractor and was thus insulated from their direct supervision and control, they are not liable to him under the Scaffold Act. In essence it was defendants' position that plaintiff failed to demonstrate that they had charge of the work being done by him, a necessary element of an action of this nature.

Section 9 of the Structural Work Act (Ill. Rev. Stat. 1969, ch. 48, par. 69) imposes liability for willful violations of the terms of the Act upon "[a]ny owner, contractor, subcontractor, foreman or other person *having charge of* the erection * * * of any building * * *." (Emphasis added.)

The Supreme Court construed the phrase "having charge of" in *Larson v. Commonwealth Edison Co.*, 33 Ill. 2d 316, 211 N.E.2d 247. There Commonwealth Edison contracted with a number of construction firms to remodel certain of its buildings. The plaintiff's employer was a contractor whose work was subject to the satisfaction of Commonwealth Edison. The court, construing the Act in accordance with the beneficent purpose intended for it by the legislature, held that "while the actual exercise of supervision and control over the work and the persons doing it, or the retention of the right to so supervise and control, may be factors bearing on the ultimate factual question of whether an owner is 'in charge,' they are not necessary or conclusive factors, nor is either made a *sine qua non* for liability under the statute." (33 Ill. 2d 316, 322.) The court indicated that a flexible rule, taking into account the factual circumstances presented in each case, should be employed in determining who is a

person "having charge" of work. In *Larson,* Commonwealth Edison's presence on the jobsite, its coordination of all phases of the work, receipt of progress reports and right to refuse work and also its precautions and changes with respect to work weighed heavily in the court's holding that Commonwealth Edison was a person "having charge" of the work. An additional factor often singled out as having great significance in determining whether a defendant was in charge of a project within the meaning of the Act is the right to stop the work. See *Miller v. DeWitt,* 37 Ill. 2d 273, 226 N.E.2d 630; *Isabelli v. Cowles Chemical Co.,* 7 Ill. App. 3d 888, 289 N.E.2d 12.

■■■ In the instant case, with respect to defendants Webb Properties and Oakbrook Development, the owners of the property, the *only* evidence tending to establish their having charge of the work was a contractual provision under which they retained the power to make changes in the work. Their involvement in the construction of the building being erected for them was clearly much more remote than that of Commonwealth Edison in the *Larson* case. Since "[v]iolations of the Act can only be committed by persons directly connected with the operation, not by virtue of mere ownership of the premises" *(Wood v. Commonwealth Edison Co.,* 343 F. Supp. 1270, 1272 (N.D. Ill. 1972)), we hold that the court below properly directed a verdict in their behalf.

With regard to defendant Alfred Shaw & Associates, the architect, we note that there was testimony demonstrating its occasional presence on the jobsite to see that the work was going according to plan. However, Peter Shaw of the architectural firm testified that it had absolutely no interest in the manner in which the tradesmen accomplished the work. This situation is therefore distinguishable from the one discussed in *Miller* where the court imposed liability on an architect who contracted to generally supervise and direct the work and who had the authority to stop the work. In the recent case of *McGovern v. Standish,* 33 Ill. App. 3d 717, 719, 341 N.E.2d 739, the court reversed a judgment against an architect who had the right to give instructions to the general contractor's superintendent and whose assistant was present at the jobsite "to give the supervision necessary to see that construction followed the design," holding that he was not a person in charge of the work within the meaning of the Act. The court saw as particularly significant the fact that "there is no contractual provision giving the architects a right to stop the work." In the instant case plaintiff failed to demonstrate that Shaw had control similar to that exercised by the architect in *Miller.* Indeed, it is apparent that Shaw's control fell short of that of the architect in *McGovern.* It is therefore our opinion that the direction of a verdict in favor of Shaw was not improper.

■■ On the other hand we believe that plaintiff introduced sufficient

evidence tending to prove that defendant Del E. Webb Corporation, the general contractor, had charge of the work to meet the *Pedrick* standard. We are drawn to this conclusion from an analysis of the supreme court's holding in *McInerney v. Hasbrook Construction Co.*, 62 Ill. 2d 93, 338 N.E.2d 868. There, in an action brought by the employee of a subcontractor, the court affirmed the appellate court's reversal of a judgment notwithstanding the verdict in favor of a general contractor whose superintendent would schedule, supervise and coordinate the work of the subcontractors. These activities, the court held, were sufficient to establish that the general contractor had charge of the work. In the instant case Frolik, the project superintendent employed by defendant Del E. Webb Corporation, testified that he was in charge of the assignment of tasks to subcontractors, the scheduling of construction, the oversight of workmanship, the provision of supervision necessary to assure compliance with plans and specifications, and had the right, under certain circumstances, to stop work. Thus, plaintiff met his burden on this issue.

The fact that we believe plaintiff introduced sufficient evidence to meet the *Pedrick* standard on the issue of whether Del E. Webb Corporation was in charge of the project does not require us to reverse the judgment, for in order to establish Webb's liability plaintiff was also required to demonstrate that it willfully violated the Act. (Ill. Rev. Stat. 1969, ch. 48, par. 69; *Gundich v. Emerson-Comstock Co.*, 21 Ill. 2d 117, 128, 171 N.E.2d 60.) Plaintiff failed to do so.

In *Vykruta v. Thomas Hoist Co.*, 75 Ill. App. 2d 291, 221 N.E.2d 99, the issue of whether a willful violation of the Act had occurred was raised in an action brought by a bricklayer who was injured while riding a material hoist to the third floor of a construction project. The court held at page 304 that "[e]ven if a contractor is in charge of the work the evidence must show that on occasions prior to the injury the plaintiff or other workers had used as a scaffold or hoist an object not designed for such use and that this practice or usage was or reasonably should have been known to the defendant."

Subsequent cases have affirmed the granting of directed verdicts for defendants on the basis of the insufficiency of the plaintiff's evidence on the issue of whether the defendant knew or should have known of the plaintiff's dangerous use of a scaffold or hoist.[2] In *Lavery v. Ridgeway House, Inc.*, 117 Ill. App. 2d 176, 254 N.E.2d 117, for example, a workman was injured while riding a material hoist, a device designed to lift

---

[2] We note that in *Roder v. Dobbs*, 72 Ill. App. 2d 211, 218 N.E.2d 873, a case decided prior to the supreme court's opinion in *Pedrick*, a directed verdict in favor of the defendant, based in part on the plaintiff's failure to prove a willful violation of the Scaffold Act, was affirmed.

equipment, not men. The plaintiff introduced evidence that on at least one occasion prior to his injury a workman had been seen riding the hoist. Nonetheless, the court upheld the defendant's directed verdict, citing as factors in its decision the absence of evidence indicating that the hoist was in a defective condition and the fact that the personnel of defendant who were present at the jobsite never saw any workers riding the hoist.

Likewise, in *Mundt v. Ragnar Benson, Inc.*, 18 Ill. App. 3d 758, 769, 310 N.E.2d 633, the court held that the "plaintiff's proof had been insufficient to make out a case under the Illinois' Structural Work Act." The plaintiff had been injured when he fell through a hole left for an elevator shaft in a building that was under construction. Plaintiff brought suit against the owner of the building and the "management contractor." The evidence showed that the plaintiff's employer, a subcontractor, was responsible for covering the holes and for the shoring, decking and stripping operations on the site. In addition, the plaintiff's employer was responsible for coordinating the various trades on the job. There does not seem to have been any indication that the defendants exercised direct control over these operations. The court, while noting that "in our opinion, defendants did have 'charge of' the subject construction within the Act's provisions", held that the defendants were not guilty of a willful violation or a willful failure to comply with the Act.

In the instant case the evidence indicates that plaintiff's practice of remaining on the Baker scaffold while it was moved constitutes a dangerous usage of the device and one for which it was not intended. There was no indication that the scaffold was in a dangerous or defective condition. The evidence further indicated that there were no unusual hazards present on the construction site where plaintiff was injured. Plaintiff in his reply brief asserts that "Frolik was on the premises daily and had actual knowledge of the unsafe custom and practice of working with scaffolds." Frolik was asked whether he had "knowledge as to the custom and practice of the industry as to whether a tradesman stays on the scaffold while it's being moved." He replied, "That is often done." Frolik further testified that he had no particular knowledge of the skills used by any building trade nor any specific knowledge of the manner in which plaintiff carried out his job. There was no evidence that Frolik, the job superintendent, actually saw the scaffold being moved with plaintiff on it or that he knew the practice was going on.

■■ Moreover, from the record before us we do not believe that it could be held that Frolik should have known of plaintiff's utilization of the scaffold in an unsafe manner. Plaintiff was under the direct supervision of his foreman, an employee of the subcontractor of a subcontractor. The scaffold was not in continuous motion but rather was pushed a distance of

a very few feet only when marking operations at a particular location were completed. Frolik was charged with the overall supervision of the construction of a multistory office tower, a project necessitating the use of many workmen employed by several different subcontractors. He exercised no direct control over the manner in which these workmen did their jobs. In view of these circumstances we cannot say that plaintiff's evidence established a willful violation or a willful failure to comply with the terms of the Act by Del E. Webb Corporation. The granting of a directed verdict on behalf of this last defendant was not error.

Plaintiff next contends that the court erred in denying its motion for a change of venue. Plaintiff pointed to a conversation between the trial judge and counsel over two weeks before the trial commenced during which the judge stated that he viewed with suspicion claims brought under the Scaffold Act after plaintiffs had received sums under the Workmen's Compensation Act.

Section 3 of the Venue Act provides:

> "Every application for a change of venue by a party or his attorney shall be by petition, setting forth the cause of the application and praying a change of venue, which petition shall be verified by the affidavit of the applicant. A petition for change of venue shall not be granted unless it is presented before trial or hearing begins and before the judge to whom it is presented has ruled on any substantial issue in the case, provided that if any grounds for such change of venue occurs thereafter, a petition for change of venue may be presented based upon such grounds." Ill. Rev. Stat. 1973, ch. 146, par. 3.

■■ In the instant case plaintiff did not submit a written petition for a change of venue until the third day of the trial. The grounds stated therein relate to the statements made by the trial judge long before the commencement of the trial. Thus the petition was not made in a timely fashion, and this ground alone would be sufficient to justify its denial. Moreover, during arguments on this motion below, counsel for plaintiff admitted that it was based, in part, on a desire to delay the start of trial. It is clear that the court did not err in denying plaintiff's petition.

■■ Finally, plaintiff contends that he was prejudiced by the court's refusal to admit certain safety standards into evidence. These standards were contained in a 1958 accident prevention manual prepared by the Associated General Contractors of America and the American National Standards, the "bible" of the industry. Plaintiff was able to introduce extensive expert testimony on these standards which indicated they were merely codifications of common sense practices. In essence, they merely reflected the customs and practices of the construction industry. Moreover, these standards were not made part of any relevant contract. It

is apparent that their admission would have constituted, at best, cumulative custom and practice evidence, and therefore it is our belief that plaintiff was not prejudiced by their exclusion. *Cf. Grant v. Joseph J. Duffy Co.,* 20 Ill. App. 3d 669, 681, 314 N.E.2d 478.

For the foregoing reasons the judgment is affirmed.

Affirmed.

LORENZ, P. J., and BARRETT, J., concur.