ROBERT M. MEEK, Plaintiff-Appellant, *v.* SPINNEY, COADY AND PARKER ARCHITECTS, INC., f/k/a G-S-C Architects, Inc., *et al.*, Defendants-Appellees.

Fourth District   No. 13869

Opinion filed August 1, 1977.

CRAVEN, P. J., concurring in part and dissenting in part.

W. L. Wierman, of Wierman & Wierman, of Decatur, for appellant.

Heyl, Royster, Voelker & Allen, of Springfield (Frederick P. Velde, of counsel), for appellee Spinney, Coady and Parker Architects, Inc.

Claudon, Elson, Lloyd & Barnhart, Ltd., of Canton (James J. Elson, of counsel), for appellee Cedric H. Reed.

Mr. JUSTICE MILLS delivered the opinion of the court:

This is a Structural Work Act case.

And we affirm.

The complaint here alleged that Spinney, Coady and Parker Architects, an architectural firm, and Cedric H. Reed were in charge of the construction of the roof under Capital Development Board contracts for work to be done at the Adolph Meyer Zone Center in Decatur, and that plaintiff Meek was an employee of C. A. Petry and Sons, Inc., the general contractor on the job, when the ladder he was using collapsed. The complaint further alleged that defendants Spinney and Reed were in charge of the construction and were responsible for plaintiff's injuries under sections 1 and 9 of the Structural Work Act (Ill. Rev. Stat. 1973, ch. 48, pars. 60, 69). Copies of the architect's contract with the Capital Development Board, part of the general contractor's contract, and Cedric Reed's contract were attached to the complaint.

Defendants filed separate motions to dismiss alleging that plaintiff's only remedy was under the Workmen's Compensation Act and that each is not a "person having charge of" the construction as is necessary to allege a claim under the Structural Work Act. The trial court dismissed the complaint with prejudice, having found, as a matter of law, that neither defendant was in charge of the work. Plaintiff appeals.

The *sole issue* on review is whether plaintiff's complaint alleged any facts which, together with the reasonable inferences therefrom, could support a finding that either defendant was "in charge of" the work, as described in the Structural Work Act. The Act states in part:

"Any owner, contractor, sub-contractor, foreman *or other person having charge of* the erection, construction, repairing,

alteration, removal or painting of any building, bridge, viaduct or other structure within the provisions of this act, shall comply with all the terms thereof, and any such owner, contractor, subcontractor, foreman or other person violating any of the provisions of this act shall be guilty of a Class A misdemeanor.

      \* \* \*

For any injury to person or property, occasioned by any wilful violations of this act, or wilful failure to comply with any of its provisions, a right of action shall accrue to the party injured, for any direct damages sustained thereby." (Emphasis added.) Ill. Rev. Stat. 1973, ch. 48, par. 69.

Both defendants Spinney and Reed must be—if they are anything—an "other person."

■■ ■ More than one entity may be in charge of the work and the determination of that issue is generally a question of fact for the jury. (*McInerney v. Hasbrook Construction Co.* (1975), 62 Ill. 2d 93, 338 N.E.2d 868.) The complaint must allege more than the conclusion that defendant is "in charge" in order to withstand a motion to dismiss. (*Van Dekerkhov v. City of Herrin* (1972), 51 Ill. 2d 374, 282 N.E.2d 723.) "Having charge of" is a term given a broad meaning in view of the beneficent purposes of the Act, and is not limited to active supervision and control. *Larson v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 316, 211 N.E.2d 247.

The two defendants will be treated separately.

## SPINNEY

The issue of an architect's possible liability under the Structural Work Act was first discussed in *Miller v. DeWitt* (1967), 37 Ill. 2d 273, 226 N.E.2d 630. There, plaintiff was an employee of the contractor who sued the supervising architect. The court stated:

"As a general rule it has been said that the general duty to 'supervise the work' merely creates a duty to see that the building when constructed meets the plans and specifications contracted for. [Citations.] (37 Ill. 2d 273, 284, 226 N.E.2d 630, 638.)

However, the court went on to hold that the architects could properly be found liable by the jury in that case because of the breadth of their duty to supervise as indicated in their contract with the owner and the contractor's contract with the owner. In those two contracts, the architect was given general supervision and direction of the work, was designated agent of the owner and was given authority to stop the work. The court in *Miller* further said that, although the architect had no duty to specify the methods the contractor would use, they had a duty under the contract to insist upon safe use of the contractor's method. The court stated that the

architect's right to stop the work made them persons "having charge."

Since *Miller*, plaintiffs have not been particularly successful against architects. In *McGovern v. Standish* (1976), 65 Ill. 2d 54, 357 N.E.2d 1134, the supreme court upheld the appellate court's reversal of a jury verdict against the architect. Although the architect had a duty of general administration and inspection, since he had no direct connection with the particular operation which involved a violation from which the injury arose, he was not liable.

In *Getz v. Del E. Webb Corp.* (1976), 38 Ill. App. 3d 880, 349 N.E.2d 682, the trial court directed a verdict for the general contractor, the architect and the consulting engineer. As to the architect, the court held that he was not in charge, where he was only occasionally present to see if the work was going according to plan, that there was no duty of general supervision and no right to stop the work.

And in *Voss v. Kingdon and Naven, Inc.* (1975), 60 Ill. 2d 520, 328 N.E.2d 297, the supreme court affirmed the appellate court's reversal for a new trial after the trial court had directed a verdict for the defendant, the consulting engineer. This defendant had a duty of continuous inspection, and authority to fire any employees of the contractor and the right to stop the work.

■■ Here, in this case, the contract between the architect and the CDB is attached as an exhibit, as is part of the contract with the general contractor. In neither does it appear that the architect had a right to stop the work. In addition, the architect had no continuous supervision duties, merely a duty to visit approximately once a week to generally determine if the work was proceeding according to plan. Although *McGovern* and *Getz* involved direction of a verdict and not dismissal of a complaint, those cases are applicable here since the determination generally turns on the contract terms.

### REED

According to the contract between Cedric Reed and the CDB, he is an independent fulltime consulting inspector. His duties were to report defective work and construction delay to the CDB, to attend conferences, and to check items after completion. He was specifically denied power: (1) to authorize deviations; (2) to conduct tests; (3) to enter into the area of responsibility of the contractor's superintendent; (4) to expedite work; (5) to advise or direct methods or safety precautions; and (6) to stop work. Plaintiff does not allege any facts which show that Reed did more than was in his contract. Clearly, according to the contract, his duties were strictly to inspect and not to control the work in any respect.

■■ Plaintiff argues that this contract is an attempt to relieve Reed of liability under the Structural Work Act. Liability to a person injured

cannot be evaded by contract. (*John Griffiths & Son Co. v. National Fireproofing Co.* (1923), 310 Ill. 3141 N.E. 739.) But, as Reed points out, it is not a question of denying liability by contract but of making a contract which never exposes Reed to liability because he is never given authority to be considered as being "in charge."

In *Scrimager v. Cabot Corp.* (1974), 23 Ill. App. 3d 193, 318 N.E.2d 521, the owner, in its contract with the general contractor, retained the right to fire any employee, to require compliance with any safety instruction from the owner, and to stop the work. Another clause denied the owner any right to control methods used by the contractor. The clauses were definitely contradictory. The *Scrimager* court said that one cannot assume control of the work, even if it is not exercised, and at the same time exclude any responsibility for safety. In Reed's contract with the CDB, there are no such contradictions. His only real duty was to inspect and report.

Plaintiff argues that Reed's duty to report a situation which, in Reed's view, requires the project to stop, and to stop the project if he received explicit instructions from the CDB, are sufficient responsibilities that a jury could reasonably conclude that he is a person in charge. The cases have not so held, nor do we.

CONCLUSION

Even if plaintiff proved all that he alleges, neither the architect (Spinney) nor the consulting inspector (Reed) could be found to be "in charge."

Affirmed.

GREEN, J., concurs.

Mr. PRESIDING JUSTICE CRAVEN, concurring in part, dissenting in part:

I concur in that portion of the opinion affirming the dismissal of the complaint against defendant Reed because he is expressly and contractually precluded from being in charge of the work. As to defendant Spinney, I dissent because the contract on its face at least raises a question of face regarding its control of the construction.

In *Miller v. DeWitt* (1967), 37 Ill. 2d 273, 226 N.E.2d 630, our supreme court said that architects could be found to be in charge of construction so as to come within the liability provisions of the Structural Work Act. In *Miller*, the contract between the owner and the architects provided that the latter's duties included:

" '[T]he general Administration of the construction contract and

supervision of the work' (par. I); 'general supervision and direction of the work' (par. 38); and [gave] them 'the authority to stop the work whenever such stoppage may be necessary to insure the proper execution of the contract' (par. 38)." (37 Ill. 2d 273, 284, 226 N.E.2d 630, 638.)

The supreme court appeared to retreat from its stand in *Miller* in the recent case of *McGovern v. Standish* (1976), 65 Ill. 2d 54, 357 N.E.2d 1134. However, the court retreated from *Miller* only as applied to the facts in *McGovern*. "In addition to those factors present in *Miller* and *Voss* and absent here, we note that the evidence does not establish that the defendant had any right to control or direct the manner or methods by which the construction would be accomplished." 65 Ill. 2d 54, 69, 357 N.E.2d 1134, 1142.

The contract between the Capital Development Board and the architectural firm was appended to plaintiff's complaint and made a part thereof. That contract provided as follows:

"The Architect shall use his best professional effort to expedite the progress of construction and to protect the Owner and User from deficiencies in the work of the contractor and subcontractor."

This contractual provision appears to place the architect "in charge" of the construction. Even if it cannot be said that on its face the contract does not put Spinney in charge of the construction, for the purposes of a motion to dismiss, at least, a factual question arises as to the architects' responsibility. The existence of such factual question upon the motion to dismiss precludes a determination that there is no liability as a matter of law. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.