JAMES L. DIOMAR, Plaintiff-Appellant, *v.* LANDMARK ASSOCIATES, Defendant-Appellee.

First District (2nd Division)   No. 79-529

Opinion filed March 4, 1980.

Raymond P. Concannon, of Miller and Concannon, of Chicago, for appellant.

Raymond R. Cusack, of Johnson, Cusack & Bell, Ltd., of Chicago (Thomas H. Fegan and William G. Beatty, of counsel), for appellee.

Mr. JUSTICE HARTMAN delivered the opinion of the court:

Naming nine defendants[1] in his first amended complaint (hereinafter complaint) for personal injury damages he allegedly sustained when working as a pipe fitter while an employee of a subcontractor, plaintiff James L. Diomar, claimed that the sole defendant involved in this appeal, Landmark Associates (hereinafter Landmark), the architect, was one of the entities in charge of the work and was amenable to him for damages under the Structural Work Act (Ill. Rev. Stat. 1975, ch. 48, pars. 60, 69) (hereinafter the Act). Landmark's answer denied, among other things, that it was in charge of the erection, supervision and control of the construction project.

Landmark thereafter filed its motion for summary judgment supported by a copy of the American Institute of Architects' "standard form of agreement" (hereinafter AIA contract) between the general contractor, Inland Construction, Inc., and Landmark, and an affidavit of Landmark's president. Plaintiff filed his response to the summary-judgment motion, including copies of the same supporting documents previously filed by Landmark as well as certain applications and certificates for payment certified by Landmark, copies of correspondence, notices and minutes of job site meetings. A reply was filed by Landmark to plaintiff's answer. A hearing was held on the summary-judgment motion which was granted by the trial court with appropriate Supreme Court Rule 304(a) language (Ill. Rev. Stat. 1977, ch. 110A, par. 304(a)). It is from this order that plaintiff appeals raising the questions of whether the evidence supporting Landmark's motion for summary judgment was free from doubt and whether there was a sufficiently direct connection between Landmark's responsibilities and the work performed on the construction site as to impose liability under the Act. For the reasons which follow, we affirm.

The facts we set forth emanate from the pleadings, exhibits, affidavit and documents filed in support of and in opposition to the motion for summary judgment. Plaintiff asserted that while working in the second floor area of the construction site of the Fox Valley Shopping Center, Aurora, Illinois, he fell through an unprotected opening in the concrete floor, sustaining the alleged personal injuries. The complaint identified certain alleged wilful violations of the Act committed by the defendants of which Landmark was accused of having been guilty, including failure to provide adequate scaffolding and other protective devices. Landmark's answer denied all allegations of such conduct and asserted that it had not

---

[1] Inland Construction, Inc.; J. C. Penney Company, Inc.; Hunter-Clark Ventillating Co.; Metrick Electric Company; Dover Electric Co.; Landmark Associates; Alexander Gammie Associates; Montgomery Elevator Company; Hansen-Hempel, Inc.

in any way participated in the erection, supervision or control of the project. In its motion for summary judgment, Landmark cited the absence of any genuine issue of material fact and contended that it at no time participated in any of the construction or erection work, it did not own, control or maintain any of the scaffolding on the job site, it did not give any instructions with regard to job safety, and it at no time gave directions to plaintiff or his employer, Advance Heating and Air Conditioning.

The affidavit submitted by Landmark's president outlined Landmark's role during the course of the construction, which was to become a J. C. Penney department store, and maintained that Landmark had no authority under the terms of its contract with the general contractor to stop the work on the project or that it ever attempted to do so. The affidavit also averred that Landmark had no continuous on-site representation at the project nor any duties or responsibilities concerning the manner or methods of construction employed on the project site.

The AIA contract upon which both parties relied contains the following provisions, among others:

> "1.1.14 The Architect shall make periodic visits to the site to familiarize himself generally with the progress and quality of the Work and to determine in general if the Work is proceeding in accordance with the Contract Documents. On the basis of his on-site observations as an architect, he shall endeavor to guard the Owner against defects and deficiencies in the Work of the Contractor. The Architect shall not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. The Architect shall not be responsible for construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work, and he shall not be responsible for the Contractor's failure to carry out the Work in accordance with the Contract Documents.
>
> * * *
>
> 1.1.21 The Architect shall not be responsible for the acts or omissions of the Contractor, or any Subcontractors, or any of the Contractor's or Subcontractors' agents or employees, or any other persons performing any of the Work."

Other factual considerations will be identified in the body of the opinion.

■■ The rules by which summary judgment procedures are governed have been well established. Recognized as a salutary procedure in the administration of justice (*Allen v. Meyer* (1958), 14 Ill. 2d 284, 152 N.E.2d 576), summary judgment is a remedy which nevertheless must be cautiously granted so that the respondent's right to trial is not usurped in

the presence of material evidentiary conflicting facts and inferences. The function of this procedure is to determine the existence or absence of triable issues of fact, not to try them. The moving party for summary judgment must affirmatively show that his right thereto is clear, free from doubt and determinable solely as a matter of law. If any material fact or facts upon which reasonable persons may disagree are identified, or inferences may be fairly drawn from those facts leading to differing conclusions, the trial court must deny the motion and direct that the resolution of those facts and inferences be made at trial. (Ill. Rev. Stat. 1977, ch. 110, par. 57; *Nolan v. Johns-Manville Asbestos & Magnesia Materials Co.* (1979), 74 Ill. App. 3d 778, 794, 392 N.E.2d 1352; *Littrell v. The Coats Co.* (1978), 62 Ill. App. 3d 516, 519-20, 379 N.E.2d 293; *Century Display Manufacturing Corp. v. D. R. Wager Construction Co.* (1977), 46 Ill. App. 3d 643, 648, 360 N.E.2d 1346.) Although a complaint and answer may purport to raise issues of material fact, if such issues are not further supported by evidentiary facts through affidavits, summary judgment is appropriate, particularly when the moving party supplies facts uncontradicted by counteraffidavits, and which entitle the movant to a judgment as a matter of law. *Carruthers v. B. C. Christopher & Co.* (1974), 57 Ill. 2d 376, 380, 313 N.E.2d 457; *DiPrima v. Edwards* (1977), 55 Ill. App. 3d 633, 371 N.E.2d 252; *Fruzyna v. Walter C. Carlson Associates, Inc.* (1979), 78 Ill. App. 3d 1050.

The actionable language of the Act involved in this appeal is to be found in section 9 (Ill. Rev. Stat. 1975, ch. 48, par. 69), which provides in part:

"Any owner, contractor, sub-contractor, foreman or other person having charge of the erection, [or] construction * * *of any building * * *within the provisions of this act, shall comply with all the terms thereof * * *.
* * *

For any injury to person * * * occasioned by any wilful violations of this act, or wilful failure to comply with any of its provisions, a right of action shall accrue to the party injured, for any direct damages sustained thereby; * * *."

The foregoing statutory duty devolves upon each class of persons identified by the statute only if they "have charge of" the work (*Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.* (1961), 22 Ill. 2d 305, 323, 175 N.E.2d 785), which is usually a question for the trier of the fact. There may be instances, however, in which there is "* * * insufficient evidence to create a factual question of whether a defendant has charge of the work" (*Norton v. Wilbur Waggoner Equipment Rental & Excavating Co.* (1979), 76 Ill. 2d 481, 486, 394 N.E.2d 403), which may be determined not only from the written contracts but also from the surrounding

circumstances and from the role assumed by such a defendant. (*Fruzyna*, 78 Ill. App. 3d 1050, 1054; *McGovern v. Standish* (1975), 33 Ill. App. 3d 717, 341 N.E.2d 739, *aff'd* (1976), 65 Ill. 2d 54, 357 N.E.2d 1134.) The many and sometimes ambiguous interpretations of the statutory "having charge of" language are discussed in detail in *Norton* and need not be repeated here except in summary: whereas the actual exercise of supervision and control over the work and the persons doing it, or the retention of the right to so supervise and control, may be factors bearing on the question of "having charge of" the work, they are neither necessary nor conclusive (*Larson v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 316, 321-22, 211 N.E.2d 247); contract provisions giving an architect the duty to supervise the work and guard the owner against defects and deficiencies with authority to "stop the work," if necessary, carry with them implications of "having charge of" the work (*Miller v. DeWitt* (1967), 37 Ill. 2d 273, 286, 226 N.E.2d 630); such right to "stop the work" means the right to stop work being done in a dangerous manner or involving dangerous methods, rather than simply the right to reject defective materials and workmanship and require their correction (*McGovern v. Standish* (1976), 65 Ill. 2d 54, 68-69); "having charge of" means having charge of particular operations which involved the violation from which the alleged injury arose shown by proof that such control was exercised, or that the right to control existed whether exercised or not, or that the architect maintained a "direct connection" with the work (*Emberton v. State Farm Mutual Automobile Insurance Co.* (1978), 71 Ill. 2d 111, 119, 373 N.E.2d 1348); and the architect's right to supervise, together with the ancillary right to inspect to see that contractual specifications are met is not conclusive in determining whether a defendant "has charge of" the work within the meaning of the Act, but such determination must rest upon an assessment of the "totality of the circumstances" (*Norton v. Wilbur Waggoner Equipment Rental & Excavating Co.* (1979), 76 Ill. 2d 486, 490). With the foregoing rules as frames of reference, we next consider the contentions of the parties to this appeal.

Relying principally upon *Emberton*, plaintiff maintains that the trial court was authorized to find as a question of fact a "direct connection" between Landmark and the work being performed even in the absence of evidence showing its exercise of supervision and control or the retention of the right to do so. The supreme court noted in *Emberton* that the term "'direct connection,' like the term 'having charge of,' is one of common usage and understanding, and whether persons may be held to have a 'direct connection' with the work depends upon the circumstances of each case." (71 Ill. 2d 111, 119.) The circumstances there are inapposite to those found in the instant case. In *Emberton*, State Farm's employees

made over 1300 job-site inspections during construction and its architect, Ellerbe Associates, Inc., sent representatives to accompany those employees on some of those occasions. Ellerbe's project representative was assigned continuously to the job site for more than three years. In contrast, the uncontroverted affidavit of Peter Van Putten, president of Landmark, asserts that said defendant had no such continuous job-site representative; did not employ a project inspector to review the work; and that its representative made two visits to the job site which had no connection with construction safety considerations. Further, in *Emberton*, Ellerbe's representative attended all the weekly progress and coordination meetings conducted by the general contractor with the subcontractors, whereas, in the instant case, the job-site meetings identified by plaintiff at which methods, means or safety considerations might have been discussed were held without the presence of Landmark's representatives, who were alleged to have received notices of those meetings as a matter of courtesy rather than as a matter of obligation to attend. *Emberton* also reveals that the architect's representatives there directed the performance of certain work and required that certain safety equipment be utilized on the job site, a responsibility which Landmark did not assume either by contract or during the course of construction as a matter of conduct.

Significantly, in *Emberton* the architect was given the explicit authorization to stop the work when necessary for the proper performance of the contract. No such language appears in the AIA contract presented by the parties in the present case. Plaintiff relies upon section 1.1.17 of the instant contract, which provides that the architect shall have the authority to "reject" work which does not conform to the contract documents as well as authority to require special inspection or testing of any work in accordance with the provisions of the contract document to insure the proper implementation of the intent thereof. Such rights, however, merely create a duty to see that the building, when constructed, meets the plans and specifications contracted for. (*Miller v. DeWitt* (1967), 37 Ill. 2d 273, 284.) This is particularly true when considered together with the specific provisions of section 1.1.14 of the contract, which excuses the architect from having to make exhaustive or continuous on-site inspections to check the quality or quantity of the work and exempts the architect from responsibility for construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the work as well as responsibility for the contractor's failure to carry out the work in accordance with contract documents. Contractual language such as this leaves little, if any, basis for inferring that the architect was charged with or authorized to control those aspects of the construction as would precipitate liability for

plaintiff's injuries under the Act. The Van Putten affidavit states, without contradiction, that Landmark had no obligation or responsibility with respect to job safety at the project site or authority to stop work on the . project if hazardous conditions existed, nor did Landmark attempt to halt work at the job site as the result of any hazardous working conditions. In light of the foregoing circumstances, we do not see how the right to "reject" work which fails to conform to contract documents can be interpreted as the right to stop work when hazardous conditions, manner or means of construction existed.

Plaintiff's reliance upon *Moore v. Clearing Industrial District, Inc.* (1978), 64 Ill. App. 3d 391, 380 N.E.2d 1063, is equally misplaced. There, the owner was found to have been a person "having charge of" the work by virtue of its frequent inspections, right to change work orders, right to remedy deficiencies in the contractor's performance and right to terminate the contractor's services for violation of its contract, including compliance with applicable safety laws, making its influence on job site safety procedures apparent. Such responsibilities find no parallel in the AIA contract between Landmark and the general contractor, Inland Construction Co., Inc., or in Landmark's conduct during the course of construction insofar as the record reveals.

Landmark contends that its position is fortified by contractual language in article 14 states that "engineering services for the following trades are excluded except that the architect shall give informal advice and consulation [*sic*] [as to] a. heating, ventilating and air conditioning. * * *" This provision, Landmark argues, demonstrates that the architect, having excluded the heating, ventilating and air conditioning trades from the scope of its agreed-upon engineering services, could not possibly be construed to have been a person "having charge of" such work since plaintiff was employed in heating and air conditioning work at the time of his accident. Plaintiff counters with the assertion that even informal advice and consultation, a phrase not defined in the contract, raises a question of fact as to the architect's "having charge of" or having a "direct connection" with the work. Defendant's contention, although unnecessarily broad in its projected application, must be accepted in this instance in the absence of any showing by plaintiff controverting Van Putten's affidavit which articulated Landmark's limited role at the job site. *Carruthers v. B. C. Christopher & Co.*

Plaintiff infers Landmark's "having charge of" or "direct connection" with the work from the contractual requirements of the architect's periodic visits to the site, his determination of the amounts owing to the contractor based upon those visits, his issuances of interim and final certificates of payment for work performed in accordance with the contractual documents and applicable laws, his determination of dates of

substantial completion of the work, and his right to prepare change orders under sections 1.1.14, 1.1.15, 1.1.19 and 1.1.20 of the AIA contract. The foregoing provisions, without more, form no basis upon which to impute such responsibility; rather, as the supreme court has held, these contractual duties, the affidavit and exhibits show no more than a general requirement that the architect oversee the work performed in order to insure the completion of the project and conformity with the plans and specifications, and to preclude payment for those services rendered by the contractor which fail to comply therewith. (*McGovern v. Standish*; *Miller v. DeWitt.*) The appellate court has consistently taken the same view in cases construing architects' liability under the Act. (*Meek v. Spinney, Coady & Parker Architects, Inc.* (1977), 50 Ill. App. 3d 919, 365 N.E.2d 1378; *Getz v. Del E. Webb Corp.* (1976), 38 Ill. App. 3d 880, 349 N.E.2d 682.) In *Fruzyna v. Walter C. Carlson Associates, Inc.*, the granting of summary judgment in favor of the architect under facts substantially similar to those in the instant case was upheld by the appellate court, the latter observing:

> "Carlson's [the architect] contractual duties included the general administration of the construction contract. He was the owner's agent. He generally made weekly visits to the construction site to determine if the work was proceeding in accordance to the contract documents. He was obligated to inform the owner of defects and deficiencies in the work immediately. * * * He was to prepare change orders. Both the architect and the owner could require that a subcontractor be changed. Carlson attended four progress meetings during the course of the construction. He had one occasion to inform the owner that work did not meet specifications. He did not reject any work.
>
> * * *
>
> We believe that under *Miller* and its progeny, the totality of the above factors is insufficient to create a triable issue of fact and that Carlson was not in charge of the work as a matter of law. Carlson had no authority to stop the work, had no control of construction methods or techniques, was not responsible for safety precautions and programs, had no continuous supervision duties. The architect's right to supervise or administrate the contract, together with the ancillary duty to inspect, were simply duties to see that contractual specifications were met. Accordingly, we are of the opinion that the trial court correctly granted summary judgment to the architect." 78 Ill. App. 3d 1050, 1059.

When viewed under the "totality of the circumstances" test prescribed by *Norton*, the factors presented in the instant case reveal no basis upon which to support the contention that Landmark could be liable

under the Act. The summary judgment awarded by the trial court in Landmark's favor therefore must be affirmed.

Affirmed.

PERLIN, P. J., and STAMOS, J., concur.