GEORGE SIMPKINS, d/b/a B & R Freight Haulers, Plaintiff-Appellant, *v.* PROTECTIVE INSURANCE CO. *et al.*, Defendants-Appellees.

First District (2nd Division)    No. 80-1247

Opinion filed March 31, 1981.

Cohn & Flynn, of Chicago, for appellant.

McKenna, Storer, Rowe, White & Farrug, of Chicago (Robert S. Soderstrom and Shaun McParland, of counsel), for appellees.

Mr. PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff, George Simpkins, d/b/a B & R Freight Haulers (hereinafter Simpkins), filed a complaint for declaratory judgment seeking to have the court declare that his truck tractor was covered under an automobile liability insurance policy issued by defendant Protective Insurance Company (hereinafter Protective) when it collided with a car; that Protective is obligated to defend a lawsuit involving said vehicle; and that Protective is obligated to pay any judgment that may be entered against him thereunder. On motions for summary judgment by both parties, the trial court found for Protective. Simpkins appeals, raising the issue of whether his vehicle, deemed an "automobile" under terms of the policy, was used "in the business of" his lessee at the time of the accident, thereby excluding coverage under the policy issued by Protective. For the following reasons, we affirm.

Simpkins' vehicle was subject to an equipment lease agreement with Peet Frate Lines, Inc. (hereinafter Peet), which provided that Simpkins would lease his vehicle and supply a driver to Peet for the transportation of commodities on certain intrastate routes. The lease agreement stated further:

"It is expressly agreed to and understood by Lessor and Lessee that during the term of this lease:

1. the said motor vehicle leased hereby shall be under the exclusive and complete possession, use and control of Lessee during the periods the equipment is operated by or for the Lessee.

2. the said motor vehicle leased hereby shall be used in the service of the Lessee exclusively for the transportation of the following commodities within the following described territory: * * *."

This lease ran from July 2, 1975, to July 2, 1978, and Peet was billed weekly at an hourly rate. Simpkins did not have his own Illinois Commerce Commission (hereinafter "Ill. CC") authority, but operated as a common carrier under Peet's Ill. CC authority.

The vehicle was covered by an insurance policy issued by Protective and designated as "Basic Automobile Liability Insurance (Bobtail Only)." The policy provisions at issue here, found in "Endorsement #3," are as follows:

"It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability, for Property Damage Liability and for Automobile Medical Payments with respect to any automobile described above or designated in the policy as subject to this endorsement, does not apply:

(a) * * *

(b) while the automobile is attached to any trailer or semi-trailer or while in the process of being attached or detached from any trailer or semi-trailer;

(c) while the automobile is being used in the business of any person or organization to whom the automobile is rented."

On March 10, 1976, when both the lease agreement and the insurance policy were in effect, a two-vehicle collision occurred between Simpkins' vehicle, which was driven by his employee, Frank Chaney, and a vehicle operated by Ernest Samuels, who subsequently filed suit against Chaney and Simpkins. Chaney had been en route to pick up a trailer and merchandise at Peet's terminal when the collision occurred. Peet was apparently not made a party to that lawsuit.

On January 29, 1980, and January 31, 1980, the parties filed motions for summary judgment. Simpkins' motion was supported by a copy of the

"Equipment Lease" entered into between himself and Peet. Protective's motion was supported by a copy of the discovery deposition given by Simpkins, under oath. The trial court found that at the time of the accident, Simpkins' vehicle was used "in the business of" his lessee and therefore was not covered by the policy, and entered judgment for Protective, from which Simpkins appeals.

Simpkins' argument is twofold: first, since his vehicle was not attached to a trailer or semitrailer at the time of the accident, and therefore could not have been considered as having been used in Peet's business, insurance coverage cannot be deemed to have been excluded under either paragraphs (b) or (c) of "Endorsement #3" of the policy; and second, that a common carrier lessee (*e.g.*, Peet) is vicariously responsible for the negligent operation of its leased vehicle without regard to whether the vehicle was being used in the lessee's business, when such lessee was holding itself out to the public as the responsible party by displaying its legend (*e.g.*, its name and permit name) on the leased equipment pursuant to Interstate Commerce Commission (hereinafter ICC) regulations, citing *Schedler v. Rowley Interstate Transportation Co.* (1977), 68 Ill. 2d 7, 368 N.E.2d 1287, and *Kreider Truck Service, Inc. v. Augustine* (1979), 76 Ill. 2d 535, 394 N.E.2d 1179. Simpkins suggests by this contention that the issue of whether or not his vehicle was used in lessee's business can be resolved by determining whether or not, he was holding himself out to the public to be so engaged.

Both Simpkins and Protective cite and rely upon *St. Paul Fire & Marine Insurance Co. v. Frankart* (1977), 69 Ill. 2d 209, 370 N.E.2d 1058 (hereinafter *Frankart*). The supreme court there interpreted an endorsement quite similar to that involved in the present case, under a fact pattern akin to that presented at bar. In that case, St. Paul filed suit for a declaratory judgment against its insured, Frankart, to determine whether he was covered by the insurance policy issued by St. Paul. Frankart was the owner-lessor of a tractor-trailer unit. At the time of the accident, the driver of Frankart's tractor was returning to his home from the terminal of the lessee, pulling an empty trailer, where he had just made a delivery. He had deviated from his route in order to save on the price of fuel when the accident occurred. Since Frankart's insurance excluded coverage where his vehicle was used to carry property in any business or used in the business of any person or organization to whom it was rented, the issue before the court was whether Frankart's tractor was being used in the business of his lessee when the accident occurred. The court first noted that, as Simpkins maintains, ICC regulations (which cover the leasing of owner driven tractors by franchise carriers engaged in interstate commerce) impose vicarious liability on the lessee licensed carrier when its lessor-driver (*i.e.*, the owner of the vehicle) is involved in an accident,

whether or not the vehicle was used in the business of the lessee. The court declared, however, relying upon *Wellman v. Liberty Mutual Insurance Co.* (8th Cir. 1974), 496 F.2d 131, that there was no evidence the parties intended Frankart's coverage to be controlled by those ICC regulations. Therefore, "[a]bsent any reference in the insurance policy to the ICC regulations, the term 'in the business of' must be construed according to its recognized common usage in conjunction with the rest of the policy." *Frankart*, 69 Ill. 2d 209, 215.

■■ With regard to the interplay between section (b) of the endorsement, which excluded coverage whenever the tractor-trailer was hauling loads in any business, and section (c), which excluded coverage whenever the tractor was being used in the business of any lessee, the court held (*Frankart*, 69 Ill. 2d 209, 216):

> "Section (c) does not purport to exclude coverage only when a load is being hauled for the lessee. Such a reading would render section (c) totally meaningless next to the broader exclusion of section (b). * * * [T]he policy clearly provides that coverage is excluded when [the lessor's] trailer is being used in the business of a lessee even if, at the time of the accident, the tractor is pulling an empty trailer."

Further, although the court acknowledged that the phrase "in the business of" is ambiguous, and that such ambiguities in insurance policies will be strictly construed against the insurer, the court concluded, after considering the nature of the defendant's business, that defendant was engaged in the business of the lessee when the accident occurred, and was thus not covered by the policy. Here, as in *Frankart*, paragraph (c) must be interpreted according to its plain meaning. To hold otherwise would render paragraph (c) totally meaningless. Thus, coverage is excluded when the leased vehicle is "used in the business of any person or organization to whom * * * [it] is rented" even if it is not attached to a trailer or semi-trailer.

■■ Relative to Simpkins' contention that ICC regulations are determinative of the vehicle's status in this context, aside from the fact that Simpkins operated under intrastate, rather than interstate authority, *Frankart* clearly holds that an insurance contract should not be interpreted with reference to ICC regulations, unless that contract so provides. The contract between Protective and Simpkins contains no such term. Furthermore, neither *Schedler v. Rowley Interstate Transportation Co.* nor *Kreider Truck Service, Inc. v. Augustine*, upon which Simpkins relies, are applicable to these facts. In both cases, the question was whether the lessee, a certified interstate carrier, was vicariously liable for injuries arising from an accident which occurred while the equipment was being used by the owner-lessor for its own use, and where the lessee's name and

permit number had not been removed from the vehicle or concealed, pursuant to ICC regulations. Vicarious liability is not an issue in this case; rather, it is whether Simpkins' vehicle was being used in the furtherance of Peet's business at the time of the accident. In neither *Schedler* nor *Kreider* was the question of insurance coverage involved as it is here.

Simpkins maintains nonetheless that there is insufficient evidence to support the trial court's judgment. He argues that the meaning of "in the business of" can be culled from the substance of his lease agreement with Peet. Since that agreement provided that his vehicle would be used exclusively for the transportation of commodities, he insists it could not be considered as being used in Peet's business since it was not hauling commodities when the accident occurred. From Simpkins' deposition it is clear that his driver had received dispatch orders from Peet and pursuant to those orders, the driver and tractor were enroute to pick up Peet's merchandise and trailer at the time of the accident. Peet was billed by Simpkins for the entire day and Simpkins himself acknowledged that at the time of the accident, his tractor was being used in Peet's business. No countervailing evidence was offered. No contrary inferences may be drawn from this evidence. Under these circumstances, summary judgment was properly entered in Protective's favor. See, *e.g., Diomar v. Landmark Associates* (1980), 81 Ill. App. 3d 1135, 1139, 401 N.E.2d 1287.

For the foregoing reasons, the judgment of the trial court must be affirmed.

Affirmed.

STAMOS and PERLIN, JJ., concur.