VICKI MANISCA, as Mother and Next Friend of Trisha Stanislawski, a Minor, *et al.*, Plaintiffs-Appellants, v. RAKSTANG ASSOCIATES, INC., Defendant-Appellee.

First District (4th Division)    No. 1—93—0278

Opinion filed November 18, 1993.

Leonard M. Ring & Associates, P.C., of Chicago (Leonard M. Ring, Edward G. Willer, and Harry C. Lee, of counsel), for appellants.

Piccione, Keeley & Associates, Ltd., of Wheaton (John J. Piccione, Alison S. Franklin, and Mark W. Tader, of counsel), for appellee.

JUSTICE HOFFMAN delivered the opinion of the court:

The plaintiffs filed a single-count complaint against the defendant, Rakstang Associates, Inc. (Rakstang), seeking recovery under the Structural Work Act (Ill. Rev. Stat. 1989, ch. 48, par. 60 *et seq.*) for the death of Michael A. Stanislawski. Rakstang moved for summary judgment pursuant to section 2—1005 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005), contending that it was not in charge of the work being performed by Stanislawski at the time of his death and, as a consequence, it was entitled to judgment as a matter of law. The trial court granted Rakstang's motion and subsequently found that there was no just reason to delay enforcement or appeal from its order (134 Ill. 2d R. 304(a)). The plaintiffs have appealed; and for the reasons which follow, we reverse the judgment of the trial court.

The Illinois Capital Development Board (CDB) engaged Elite Roofing & Sheet Metal, Inc. (Elite), to replace the roof on the General Jones Armory (Armory) in Chicago, Illinois. Additionally, CDB engaged Rakstang, an architectural firm, to serve as the architect-engineer for the project. On September 27, 1989, Stanislawski, a roofer's helper in the employ of Elite, fell through a portion of the Armory roof and died as a result of his injuries.

In their complaint, the plaintiffs charged that Rakstang was in charge of the work being performed by Stanislawski at the time of his death subjecting it to liability under the Structural Work Act. Rakstang moved for summary judgment contending that its sole function was to provide design services for the replacement of the Armory roof and that no material issues of fact existed upon the question of whether it was a person having charge of the work so as to render it liable under the Structural Work Act.

Summary judgment is a drastic remedy and should be granted only in those cases when the right of the movant is clear and free from doubt. (*Murphy v. Urso* (1981), 88 Ill. 2d 444, 430 N.E.2d 1079.) The statute provides, "[t]he judgment sought shall be rendered without delay if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c).) In considering whether summary judgment is appropriate, the court must construe the pleadings, depositions, admissions, and affidavits most strongly against the movant and most liberally in favor of the opponent of the motion. *Kolakowski v. Voris* (1980), 83 Ill. 2d 388, 398, 415 N.E.2d 397, 402.

■ In order for a party to be held liable under the Structural Work Act, the party must have charge of the work within the meaning of that phrase as used in the statute. (Ill. Rev. Stat. 1989, ch. 48, par. 69; *Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.* (1961), 22 Ill. 2d 305, 175 N.E.2d 785.) However, having charge of the work is a generic phrase; it includes supervision and control, but is not confined to those concepts. (*Larson v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 316, 211 N.E.2d 247.) One may be shown to have been in charge of the work either by proof of the exercise of control or by proof of the right to control the work, whether exercised or not. (*Emberton v. State Farm Mutual Automobile Insurance Co.* (1978), 71 Ill. 2d 111, 373 N.E.2d 1348; *Norton v. Wilbur Waggoner Equipment Rental & Excavating Co.* (1979), 76 Ill. 2d 481, 394 N.E.2d 403.) Whether a party had charge of the work so as to render it accountable under the statute involves an assessment of the totality of the circumstances. *Norton*, 76 Ill. 2d at 490, 394 N.E.2d at 407.

Rakstang argues that its duties and responsibilities were limited to design services and the review of documentation and work to assure compliance with the job specifications. As such, it concludes that it was not in charge of the work being performed at the time of Stanislawski's death and cannot be held liable under the Structural Work Act. (*Fruzyna v. Walter C. Carlson Associates, Inc.* (1979), 78 Ill. App. 3d 1050, 398 N.E.2d 60.) The plaintiffs argue that Rakstang's responsibilities included the right to stop work, the right to carry out the work, the right to terminate the contract, the right to order acceleration of the work, and the right to suspend work. The plaintiffs conclude that Rakstang's powers were far in excess of merely assuring that the job specifications were complied with, which raises a genuine issue of fact as to whether it was in charge of the work. *Emberton,* 71 Ill. 2d 111, 373 N.E.2d 1348.

On January 11, 1989, Rakstang entered into a "Professional Service Agreement" with CDB to provide architectural and engineering services for the Armory roof project. Section 5.8(J) of the agreement provided that Rakstang would not be responsible for the construction means, methods, techniques, sequences, procedures, or supervision or for the safety precautions and programs in connection with the project. Incorporated by reference into the agreement was a document entitled "Architect/Engineer Manual." The general provisions of the manual state, *inter alia*: "Other publications which supplement the A/E Manual and which are applicable to all CDB projects include: A. Standard Documents for Construction." CDB's "Standard Documents for Construction" contain several provisions that impact upon this case. The pertinent portions of those provisions read as follows:

"3.01. Authorized Representatives of CDB.

A. CDB has the right to designate authorized representatives, including the Architect/Engineer, to act on its behalf. CDB and its representatives shall at all times have access to the work."

"3.02. Right to Reject or Stop the Work. CDB may reject work which does not conform to the contract documents. If the Contractor fails to correct defective work or fails to supply labor, materials or equipment in accordance with the contract, CDB may order the Contractor to stop work, or any portion thereof until the cause of such order has been eliminated. Notwithstanding the preceding, the Contractor shall retain exclusive control over all duties and responsibilities imposed by the Structural Work Act."

"4.01. Duties Responsibility and Authority. An Architect/Engineer employed by CDB has prepared the Contract Documents for the project. When authorized to act on behalf of CDB, the duties, responsibility and authority of the Architect/Engineer are set forth herein."

"4.02. Construction Phase.

\* \* \*

F. Miscellaneous. Other responsibilities and authority of the Architect/Engineer are set forth throughout the contract documents."

On September 13, 1989, CDB sent a letter to Elite identifying Rakstang as its "Authorized Representative as defined in the Contract Documents."

We have no difficulty in concluding that, taken in isolation, the agreement merely created an obligation on Rakstang's part to prepare and approve documents and to observe the project on a periodic basis to ensure that the work was completed according to job specifications. Because the agreement did not obligate Rakstang to perform continuous on-site inspections or grant Rakstang the authority to stop the work or to control the methods and techniques of construction, it is insufficient to create a triable issue of fact on the question of whether Rakstang was in charge of the work. *Diomar v. Landmark Associates* (1980), 81 Ill. App. 3d 1135, 401 N.E.2d 1287; *Fruzyna,* 78 Ill. App. 3d 1050, 398 N.E.2d 60.

However, Rakstang's status as CDB's authorized representative complicates the analysis as evidenced by the contentions of the parties as to the effect of that designation on Rakstang's authority. The plaintiffs contend that by reason of section 3.01(A) of the standard documents for construction, once designated as CDB's authorized representative, Rakstang was cloaked with all of the authority possessed by CDB including the authority to stop the work. Rakstang, on the other hand, contends that, irrespective of its designation as CDB's authorized representative, its authority was still limited to that which was set forth in the agreement and essentially restated in sections 4.01 and 4.02 of the standard documents for construction. Rakstang denies that it ever had the authority suggested by the plaintiffs.

Even if we were prepared to find, as Rakstang urges, that when viewed in their totality the contract documents do not create a triable issue of fact on the scope of its authority and, specifically, its authority to stop work, our analysis does not end. The question of whether or not an architect is a person in charge of the work within the meaning of the Structural Work Act is not determined only from the written contracts but also from the surrounding circumstances and the role the architect actually assumed. *Diomar*, 81 Ill. App. 3d 1135, 401 N.E.2d 1287.

In this case, the plaintiffs introduced the deposition testimony of

Edward Zibolski, president of Elite. Zibolski testified that he was present at a meeting in August 1989 when Ed Bogacki, CDB's project manager for the Armory project, in the presence of representatives from Rakstang, stated: "[T]he architect (Rakstang) will run the project *** the architect is in charge of this project and they will be overseeing the project." Additionally, Zibolski testified that one or two days prior to Stanislawski's death, Durwin Ursery of Rakstang directed Elite to install plywood along the outside edge of the roof which constituted a change from the original specifications.

We acknowledge that in the trial court, Rakstang moved to strike portions of Zibolski's deposition testimony, arguing that it was conclusory and inadmissible hearsay. The court denied that motion and Rakstang does not challenge that ruling on appeal. Although an appellee may advance any argument on appeal that is supported by the record to defend the judgment of the trial court (*American National Bank & Trust Co. v. National Advertising Co.* (1992), 149 Ill. 2d 14, 594 N.E.2d 313), without the requirement of filing a cross-appeal (*Woodard v. Krans* (1992), 234 Ill. App. 3d 690, 600 N.E.2d 477), if an appellee fails to present that argument on appeal, it is abandoned, and the reviewing court may consider it waived (*Midway Airlines, Inc. v. Department of Revenue* (1992), 234 Ill. App. 3d 866, 602 N.E.2d 13). Further, when a party fails to preserve a hearsay objection to evidence presented on a motion for summary judgment, the reviewing court may consider that evidence to determine whether there is a genuine issue of material fact. (See *Abel v. General Motors Corp.* (1987), 155 Ill. App. 3d 208, 507 N.E.2d 1369 (reviewing court considered evidence on motion for summary judgment when hearsay objection to that evidence was raised for the first time on appeal).) As a result, Rakstang's failure to argue on appeal that the trial court improperly denied its motion to strike Zibolski's deposition testimony constitutes a waiver of that argument and this court may consider whether the evidence establishes a genuine issue of material fact.

■ The question of whether a party has charge of the work for the purposes of subjecting it to liability under the Structural Work Act is generally a question of fact for the jury to decide from a consideration of all of the circumstances in any given case. (*Fitzpatrick v. Perry Drugs Co.* (1991), 213 Ill. App. 3d 529, 572 N.E.2d 1103.) It is only in those cases where the evidence is insufficient to create a genuine factual question that the issue is capable of being decided as a matter of law in a summary judgment proceeding. *Diomar*, 81 Ill. App. 3d 1135, 401 N.E.2d 1287; see *Norton*, 76 Ill. 2d 481, 394 N.E.2d 403.

■ Our function in this case is not to determine if Rakstang was

in charge of the work being performed at the time of the occurrence giving rise to this case, but rather, to determine if on the state of the record before us we can say as a matter of law that it was not. While the evidence indicating that Rakstang was in charge of the work is not the strongest, we believe that Zibolski's testimony furnishes sufficient evidence to create a triable issue of fact on the question. For this reason, the judgment of the trial court granting Rakstang's motion for summary judgment is reversed and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

Reversed and remanded.

CAHILL, P.J., and JOHNSON, J., concur.