DOLORES HESSELINK, Indiv. and as Special Adm'r of the Estate of Robert L. Hesselink, Deceased, and as Mother and Next Friend of Chad Hesselink, a Minor, *et al.*, Plaintiff-Appellant, v. R.L. PERLOW CORPORATION *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—92—3087

Opinion filed June 23, 1994.

A. Denison Weaver and Thomas J. Gorman, both of A. Denison Weaver, Ltd., of Chicago, for appellant.

Kralovec, Marquard, Doyle & Gibbons, Chartered, of Chicago (Nancy J. Arnold, Michael J. Gibbons, and Stephen J. Smalling, of counsel), for appellee Nercon Engineering & Manufacturing, Inc.

French, Kezelis & Kominiarek, of Chicago (Robert A. Kezelis, of counsel), for appellee R.L. Perlow Corporation.

JUSTICE THEIS delivered the opinion of the court:

Plaintiff Dolores Hesselink appeals from an order of the circuit court of Cook County granting summary judgment in favor of all defendants on her action for damages arising from the death of her husband, Robert Hesselink (Hesselink). Hesselink was electrocuted when he came into contact with an energized metal rod which he was repositioning while working atop a metal scaffold. Plaintiff, as special administrator of Hesselink's estate, brought this action based on alleged violations of the Structural Work Act. (Ill. Rev. Stat. 1985, ch. 48, pars. 60 through 69.) The primary issue on appeal is whether a metal scaffold conductive to electricity constitutes a safe and suitable structural device under the Structural Work Act for the kind of work in which the decedent was engaged at the time of his death. Because a question of fact exists as to whether the conductive nature of the scaffold proximately caused the decedent's electrocution, we reverse the circuit court's grant of summary judgment and remand the matter for trial.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 13, 1986, Hesselink was electrocuted while installing an indoor overhead crane in a storage facility owned by R.L. Perlow Corporation (Perlow), a wholesaler of structural steel. Perlow had contracted with Overhead Material Company, a general contractor, for the purchase and installation of a five-ton capacity, indoor overhead crane to replace a smaller capacity crane in Perlow's South Chicago storage facility. One of the subcontractors that assisted with the installation process was Hesselink's employer, J.C. General Construction.

In order to accommodate the installation of the new crane, J.C. General Construction had to widen the distance between the existing runway and the "bus bar," an insulated metal rod which transmits electricity. This bar, which was located adjacent to the tracks upon which the overhead traveling crane rides, provided the electrical current necessary to energize the crane. Because of size differences between the cranes, the bus bar had to be moved.

On the day of the accident, Hesselink was repositioning the bus bar. He was working on top of a makeshift scaffold consisting of a metal platform mounted on the prongs of a forklift truck supplied by Perlow. When Hesselink encountered some steel equipment in his pathway, he interrupted his work and told his boss that he was going to use the smaller overhead crane to move the obstructing material. Hesselink went to the switch box controlling the bus bar power, turned the power on, and moved the equipment. Apparently forgetting to turn off the power, he returned to his work atop the makeshift scaffold. When he touched the energized bar, he was electrocuted and died.

Plaintiff Dolores Hesselink brought this action against defendants, alleging violations of the Illinois Structural Work Act. Plaintiff alleged that defendants violated the Act by failing to provide adequate scaffolds and to erect them in a safe area; by placing the scaffold upon which the decedent was working in close proximity to an energized high voltage power line; and by providing a scaffold to be used in the vicinity of energized high voltage circuits that was unsafe because it was not grounded.

Defendants moved for summary judgment, contending that the Act does not contemplate risks of injuries due to electrocution. Defendants argued that the scaffold upon which Hesselink was working neither fell down, collapsed, nor proximately caused his death. Defendants asserted that Hesselink's death resulted not from any failure of a scaffold, but rather from electrocution.

Plaintiff responded that the scaffold was a cause of the electrocution because it was made of conductive material. Plaintiff submitted an affidavit of Dr. Louis Jacobs, a registered architect and professional engineer specializing in the field of construction safety, who asserted that the scaffolding for the work involved in this case should have been constructed of wood and not metal. Dr. Jacobs further asserted that the scaffolding was neither safe nor suitable for the work being performed.

Plaintiff also submitted an affidavit from Robert Freund, a licensed professional electrical engineer, who asserted that he is an expert in electrical matters relating to safety, fire, and construction.

Freund asserted in his affidavit that he believed Hesselink died when one of his hands came into contact with the energized bus bar and the other hand then completed the circuit to ground by coming in contact with some conductive material. Freund also asserted that the scaffold upon which Hesselink was working at the time of his death was neither safe nor suitable because it was constructed of conductive material.

Relying upon the testimony of the medical examiner who conducted the post-mortem examination, plaintiff argued that one could reasonably infer that Hesselink was electrocuted when his right hand came into contact with the energized bus bar while his left hand was touching the metal railing of the scaffold. The medical examiner testified at his deposition that the electrical current travelled from one of Hesselink's hands through the chest and heart to the other hand. The examiner observed that electrical burns were found on the palm of Hesselink's left hand. According to the examiner, these burns suggested that Hesselink was gripping some conductive material in his left hand at the time of the electrocution.

The trial court denied defendants' summary judgment motion, finding that a question of fact existed as to whether defendants knew or should have known of the dangerous working conditions set forth in the affidavits of plaintiff's experts.

On May 21, 1992, only several weeks before the trial was scheduled to commence, the Illinois Supreme Court issued its decision in *American National Bank & Trust Co. v. National Advertising Co.* (1992), 149 Ill. 2d 14, 594 N.E.2d 313. In *American National Bank*, the court held that the Structural Work Act does not extend to the improper placement of a structural device which, although providing adequate support, brings a worker into dangerous proximity with a power line. On the basis of the supreme court's ruling in *American National Bank*, Perlow filed on June 10, 1992, an emergency motion for reconsideration of the trial court's previous denial of its motion for summary judgment.

On July 8, 1992, the case was assigned to a judge for trial. The following day, plaintiff moved for leave to file a second amended complaint, adding a negligence count and additional violations under the Structural Work Act. On July 9, 1992, the trial court denied plaintiff's motion for leave to amend and then granted defendants' motion for summary judgment on the existing Structural Work Act count. On September 8, 1992, the trial court denied plaintiff's motion for post-judgment relief under sections 2—1202 and 2—1203 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, pars. 2—1202, 2—1203), and this appeal followed.

## DISCUSSION

Summary judgment is appropriate where the pleadings, depositions, and affidavits show that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005(c); *American National Bank*, 149 Ill. 2d at 22, 594 N.E.2d at 316.) On a summary judgment motion, the task of the reviewing court is not to resolve a disputed factual question, but rather to determine whether one exists at all. (*Cutuk v. Hayes/ Gallardo, Inc.* (1992), 151 Ill. 2d 314, 322, 602 N.E.2d 834, 837.) Summary judgment is a drastic remedy and should be granted only in those cases where the right of the moving party is clear. (*Manisca v. Rakstang Associates, Inc.* (1993), 256 Ill. App. 3d 756, 758, 628 N.E.2d 408, 410.) We review summary judgment orders *de novo. Onsen v. Commonwealth Edison Co.* (1994), 261 Ill. App. 3d 271, 272.

The Structural Work Act was enacted to provide protection to workers engaged in extrahazardous work. (*American National Bank*, 149 Ill. 2d at 24, 594 N.E.2d at 317.) Section 1 of the Act provides:

"All scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon." (Ill. Rev. Stat. 1991, ch. 48, par. 60.)

The failure to provide an enumerated device under the Act is actionable, and the Act is to be liberally construed. *Onsen v. Commonwealth Edison Co.* (1994), 261 Ill. App. 3d at 273.

•1 On appeal, plaintiff argues that the trial court erred in granting summary judgment because a question of fact existed as to whether the decedent's injury was related to the hazardous nature of the scaffold. She points out that the affidavits of her experts raised a question of fact as to whether the scaffold provided suitable support. Because the scaffold was made from a conductive material, plaintiff asserts that the scaffold acted as a conduit for the electrical current which caused the decedent's death while he was repositioning the bus bar.

Defendants contend that the Structural Work Act addresses only

a scaffold's support function and therefore does not apply where a structural device acts as a conduit for electricity. Defendants argue that the decedent's work platform neither wobbled nor collapsed. Citing *American National Bank & Trust Co. v. National Advertising Co.* (1992), 149 Ill. 2d 14, 594 N.E.2d 313, defendants argue that the absence of evidence that the support device was unstable renders the Act inapplicable here.

*American National Bank* involved a factual scenario different from the circumstances here. In *American National Bank*, the decedent was electrocuted while painting a billboard sign. The accident occurred after he had climbed a ladder up to the top of the sign to remove some grappling hooks which supported an aluminum staging. Although no witnesses observed the accident, the parties agreed that the decedent's death was caused by his contact with a nearby high voltage overhead wire. The supreme court reversed the appellate court's denial of summary judgment, holding that the Act was not intended to protect the structural worker from electrical hazards. *American National Bank*, 149 Ill. 2d at 24, 594 N.E.2d at 317.

Unlike the present case, which involves the hazards associated with the conductive nature of a metal scaffold, *American National Bank* focused on the improper placement of a structural device. The *American National Bank* court held that the Structural Work Act does not extend to the improper placement of a structural device which brought the worker into dangerous proximity with a power line. Because the decedent's electrocution was not related to the hazardous nature of his ladder, the court held that the Act was inapplicable. In contrast, plaintiff here alleges that the scaffold upon which Hesselink worked was neither suitable nor proper; being metal, its conductive nature allegedly played a causal role in Hesselink's electrocution. One of plaintiff's engineering experts, Dr. Louis Jacobs, asserted in his affidavit that the scaffolding for the work involved in this case should have been constructed of wood rather than metal. Plaintiff's other engineering expert, Robert Freund, asserted in his affidavit that the scaffold was neither safe nor suitable for the type of work in which Hesselink was engaged at the time of his death.

*Bodam v. City of Chicago* (1993), 241 Ill. App. 3d 937, 609 N.E.2d 802, cited by defendants, is also distinguishable. In *Bodam*, a painter fell to his death after being electrocuted when he came in contact with overhead wires while climbing on an aluminum ladder to paint the outside of a building. Relying on *American National Bank*, the *Bodam* court affirmed the grant of a directed verdict for the property owner. The appellate court held that, as in *American National Bank*,

the property owner was not liable under the Structural Work Act absent a showing that the supplied ladder was defective or unstable. (*Bodam*, 241 Ill. App. 3d at 943, 609 N.E.2d at 806.) The focus of *American National Bank* and *Bodam* on whether the supporting device was defective or unstable, however, differs from the primary inquiry here of whether a conductive metal scaffold is safe and suitable under the Structural Work Act for the kind of work in which Hesselink was engaged when he was electrocuted.

We believe that plaintiff has submitted sufficient evidence to raise a question of fact as to whether the conductive nature of the scaffold proximately caused Hesselink's electrocution. The affidavit of Dr. Jacobs, for instance, asserted that the scaffolding for the work being done by Hesselink was neither safe nor suitable and should have been constructed of wood rather than metal. Plaintiff's other engineering expert, Robert Freund, stated in his affidavit that the scaffold was unsafe and unsuitable because it was constructed of conductive material. These affidavits together create a trial issue of fact as to the suitability of the metal scaffold under the Structural Work Act for the type of work in which the decedent was engaged at the time of his death.

We conclude that the trial court erred in granting summary judgment in favor of defendants and reverse.

●2 Plaintiff also argues that the trial court abused its discretion in denying her motion for leave to amend her first amended complaint. Plaintiff's proposed second amended complaint set forth additional allegations that the scaffolding was constructed of conductive material and that it acted as a conduit for the passage of electricity. The second amended complaint also added a second count alleging negligence on the part of defendants. Defendants respond that the court properly exercised its discretion because none of plaintiff's proposed changes would have cured her inability to establish a claim under the Act. Defendants also contend that they would be unfairly prejudiced if plaintiff were allowed to amend her complaint on the day of trial by adding a common law negligence claim, an entirely new theory for which they had no notice to prepare a defense.

Because the order granting summary judgment must be reversed, we also reverse the order denying plaintiff leave to amend her complaint. On remand, plaintiff will be free to renew her motion. If she files such a motion in proper form, the court should exercise its sound discretion in making its determination, according to the standards of section 2—616 of the Code of Civil Procedure. Ill. Rev. Stat. 1991, ch. 110, par. 2—616; see *Graf v. St. Luke's Evangelical Lutheran Church*

(1993), 253 Ill. App. 3d 588, 594, 625 N.E.2d 851, 856 (reversing grant of summary judgment and denial of motion to amend complaint to allege warped condition of stairs as proximate cause of fall).

Reversed and remanded.

HOFFMAN, P.J., and JOHNSON, J., concur.